## TREADWAY et al. v GLENN

No. 7417. Decided Aug. 14, 1950. (221 P. 2d 598)

■■■■■■■■■

■■■■■■■■■

See 55 C. J., Sales, Sec. 844. Action for truck repairs, trial court's refusal to allow question of defendant relating to counterclaim, 108 A. L. R. 160. See, also, 3 Am. Jur., 649.

*E. L. Schoenhals,* Salt Lake City, for appellant.

*Callister, Callister & Lewis,* Salt Lake City, for respondents.

WOLFE, Justice.

This action was commenced by the respondents, plaintiffs below, to recover the reasonable value of materials and services expended by them in making repairs to a truck owned by the appellant, defendant below, and for the reasonable value of ten truck tires which they allegedly sold to the appellant. The appellant had purchased the truck from the respondents and refused to pay for the tires and the repairs on the ground that the respondents were obligated to make the repairs and furnish the tires under the warranties of the sale. The appellant also counter-claimed, seeking to recover, among other things, $20,000 which he allegedly had lost in profits in a contract entered into by him to transport oil, due to the alleged improper design and construction of the truck. The facts of the case are in sharp dispute and for that reason each party's version of the facts will be separately stated. The parties will hereinafter be referred to as they appeared in the lower court.

The defendant adduced evidence to the following effect: The plaintiffs, copartners, are distributors for Kenworth motor trucks in Salt Lake City, Utah. The defendant is a

contractor engaged in road building. On February 13, 1946, the defendant signed a purchase order for a Kenworth truck which he intended to use in road building. He specified to the plaintiffs' agent, J. E. Golightly, that he wanted a truck like the truck which the plaintiffs had sold to one Strong, who was also a road building contractor. The truck ordered was understood by the parties to be capable of hauling a twenty-five ton Caterpillar tractor. About a month later, W. J. Treadway, one of the plaintiffs, approach the defendant and advised him that the truck which he had ordered might not be satisfactory for his use and recommended that the defendant purchase a larger truck costing several thousand dollars more than the truck he had ordered. Treadway saw the equipment which the defendant contemplated hauling on the truck and both parties were of the opinion that the larger truck would be capable of transporting the equipment. The defendant, following Treadway's recommendation, cancelled his order for the smaller truck and instructed Treadway to order him a truck of the size and dimensions suggested by Treadway. The truck was to be specially constructed at the Kenworth factory in Seattle, Washington.

At this time, trucks were difficult to secure and it was December 26, 1946, when the truck was delivered. From the outset the truck did not prove satisfactory to the defendant. Because the wheel base was too long, an excessive amount of weight was thrown on the front axle, causing the front tires to smoke, burn and blow out even when the truck was standing empty. Also, the long wheel base necessitated long drive shafts which, because of their length, would whip and tear out. The defendant, not being skilled in truck designing, did not know what caused the tires to blow out until, at the suggestion of a tire dealer, he had the front end of the truck weighed. It was then that he first learned that the front axle was overloaded.

The defendant had entered into a contract to haul oil for

road building from Woods Cross, Utah, to McGill, Nevada. He intended to use the truck for that purpose, but because the truck was unsatisfactory, he was obliged to haul the oil by rail which cost him $20,000 more than if he had transported it himself.

After the defendant had made many requests to the plaintiffs to alter the defective construction of the truck, the plaintiffs, in January of 1948, at no cost to the defendant, shortened the wheel base of the defendant's truck, using another truck which the plaintiffs had in their shop as a model. After these changes were made, the truck proved satisfactory to the defendant.

The plaintiffs' version of the facts differ in the following respects: When the defendant signed the purchase order for the truck on February 13, 1946, he informed Mr. Golightly that he wanted a truck upon which he could haul his Caterpillar tractor and constructed so that he could attach a semi-trailer to it upon which he intended to transport his power-driven excavating shovel. Later when Mr. Treadway called upon the defendant to discuss the truck he had ordered, he advised the defendant that the truck ordered was not large enough to haul the defendant's Caterpillar tractor, but that a truck could be constructed for that purpose. The defendant thereupon informed Mr. Treadway, as he had Mr. Golightly, that he not only wanted a truck large enough to haul his Caterpillar tractor, but that he desired the truck constructed so it could pull a semi-trailer carrying his excavating shovel. Treadway cautioned the defendant that it would be difficult to build a truck which would perform these two functions because in order to properly balance the truck so that it could carry the tractor, the frame of the truck would have to project over the rear axle to such an extent that a semi-trailer could not be hooked on. Treadway further warned the defendant that if the truck were constructed in the manner specified by the defendant, there would be danger of too much weight being thrown on the

front axle. The defendant assured Treadway that "he could handle it" and instructed him to place an order for a truck with a twenty-foot loading space behind the cab and with the rear axle and wheels at the extreme rear end of the truck.

Thereafter Mr. Treadway received a sheet containing the specifications of the truck ordered and a letter from the engineering department of the Kenworth Motor Truck Corporation questioning the advisability of constructing the truck. In the letter it was pointed out that the wheel base would be so long that ninety per cent of any weight placed on the truck immediately behind the cab would rest on the front axle. The defendant's reaction to the letter was that "the engineering department isn't buying the truck. I am buying it and paying my money for it and that is the way I want it built."

The truck was constructed in accordance with the defendant's desire and upon delivery he executed a check for the full purchase price. During 1947 and in January of 1948, the plaintiffs made various repairs to the truck, which included installing a new drive line assembly and also placed ten new tires on the truck. It is for these repairs and tires that the plaintiffs seek recovery in this action. No complaints were made to the plaintiffs about the truck until January of 1948. At that time the plaintiffs remedied the complaints by shortening the wheel base of the truck at no cost to the defendant.

The trial court made findings of fact in favor of the plaintiffs on the issues presented by both the complaint and the counterclaim and entered judgment against the defendant for the cost of the tires and' repairs. The findings recited that the truck was built in accordance with the defendant's desires; that the defendant was advised by both Mr. Treadway and the engineering department of Kenworth Motor Truck Corp. that the truck would not be

properly balanced in that too much weight would rest on the front axle, and consequently that Kenworth would not guarantee the performance of the truck; that the defendant nevertheless informed Mr. Treadway that he desired the truck to be built as specified by him; that subsequent to the delivery of the truck, the defendant experienced difficulty with the truck in that the front tires would frequently blow out when a load was placed on the truck; that this difficulty was due to the fact that the wheel base of the truck was too long, throwing too much weight on the front end of the truck; and that although the defendant was aware of the reason why the front tires blew out, he made no demand upon the plaintiffs to remedy the difficulty until just prior to January 5, 1948; that the plaintiffs made no special warranty on the truck and that having fully performed under the contract of sale, they were entitled to judgment for the reasonable value of the tires and repairs made to the truck by the plaintiffs.

The defendant assigns as error the lower court's refusal to find that the plaintiffs warranted the truck to be capable of transporting the defendant's equipment. There was no error, however, because there is competent evidence in the record to support the court's finding that the plaintiffs did not so warrant it. As heretofore stated, the plaintiffs adduced testimony that both Mr. Treadway and the engineering department of the Kenworth Motor Truck Corporation questioned the advisability of constructing a truck with a wheel base of the length desired by the defendant, but when the defendant assured them that "he could handle it," they acceded to his desire. Certainly on the strength of this evidence the trial court was justified in refusing to find that the plaintiffs warranted it to be capable of hauling the defendant's equipment. The defendant refers us to the testimony of Mr. Treadway upon cross-examination where he stated that although the engineering department questioned the advisability of constructing the

truck according to the defendant's specifications, the department was of the opinion that it would prove satisfactory to the defendant. This testimony does not compel a finding that the plaintiffs warranted that it would be satisfactory for the defendant's use. It is important to note in this regard that the engineering department qualified its opinion by stating that it thought the truck would prove satisfactory to the defendant if he did not place any weight on it immediately behind the cab, but properly balanced the weight towards the rear of the truck.

Having then decided that the lower court did not err in refusing to find that the plaintiffs warranted the truck to be capable of transporting the defendant's equipment, it follows that there was no error on the part of the court in entering judgment for the plaintiffs on their complaint and in refusing to enter judgment for the defendant on his counterclaim for loss of profits allegedly sustained by him as a result of a claimed breach of warranty. The defendant contends, however, that the plaintiffs at least warranted that the truck when standing empty would be properly balanced. Assuming this to be true, the court was not required to believe the defendant's testimony that the front axle was overloaded when the truck stood empty. The plaintiffs strongly maintained at the trial that it was properly balanced when standing empty. Mr. Treadway, who was present when the defendant weighed the truck at a tire dealer's suggestion and found that the front axle was over loaded, testified that the defendant had a tank on it immediately behind the cab, which, as the engineering department had warned him, would overload the front axle.

The defendant contends that the court committed error in refusing him the right to cross-examine Mr. Treadway as to whether the defendant ordered the tires and the repairs made to his truck or whether the plaintiffs agreed to furnish them without charge under a warranty of sale. The record reveals, however, that the

lower court only refused to allow the defendant to cross-examine Mr. Treadway on a matter which it considered not proper cross-examination. Counsel for the defendant had asked Mr. Treadway whether he had told the defendant at the time that the truck was delivered, that there was a vibration in the truck, but that it would not do any harm. The lower court sustained the plaintiff's objection to that question on the ground that it was connected with the defendant's counterclaim and hence should not be asked until evidence was introduced on the counterclaim. Subsequently, on rebuttal, it appears from the record that the defendant cross-examined Mr. Treadway in regard to whether he had told the defendant at the time that the truck was delivered, that the truck vibrated. Thus it is clear that there was no prejudicial error on the part of the court in this regard.

We have examined the other assignments of error made by the defendant, but find them to be without merit.

The judgment below is affirmed. Costs to the respondents.

PRATT, C. J., and WADE, LATIMER, and McDONOUGH, JJ., concur.